UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| QUINTERO HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04309-SEB-MPB |
| | ) | |
| K. MCKINNEY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY SCREENING SECOND AMENDED COMPLAINT
AND DIRECTING ISSUANCE OF PROCESS**

Quintero Hayes is an inmate at Pendleton Correctional Facility (PCF). Because Mr. Hayes

is a "prisoner," the Court is obligated to screen his second amended complaint, dkt. 72. 28 U.S.C.

§ 1915A(a), (c).

## I. Screening Standard

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the second amended complaint

if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a

defendant who is immune from such relief. In determining whether the second amended complaint

states a claim, the Court applies the same standard as when addressing a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

To survive dismissal,

> [the second amended] complaint must contain sufficient factual matter, accepted as
> true, to state a claim for relief that is plausible on its face. A claim has facial
> plausibility when the plaintiff pleads factual content that allows the court to draw
> the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Mr. Hayes' pro se pleading is construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

## II. The Second Amended Complaint

Mr. Hayes' second amended complaints describes a series of events occurring in October 2019. He names eighteen defendants, including

- PCF;

- ten Indiana Department of Correction (IDOC) employees at PCF;

- Wexford of Indiana, LLC, which has contracted to provide medical care to PCF inmates;

- four Wexford employees at PCF;

- Maxim Staffing, which staffed a temporary nurse to Wexford at PCF; and

- Shelby Bryant, the temporary nurse.

On October 10, 2019, Mr. Hayes began to experience nausea, sweating, and "crushing" chest pain. Dkt. 72 at ¶ 40. He notified Officer Evans that he needed medical attention. Officer Evans called Sergeant McKinney for assistance. Before Sergeant McKinney arrived, Officer Evans told Mr. Hayes, "I have been trying to help you and whatever happens from this point on when they get down here I don't have anything to do with it." *Id.* at dkt. 43.

Sergeant McKinney accused Mr. Hayes of faking and refused to take him to receive medical attention. Instead, Sergeant McKinney placed Mr. Hayes in handcuffs and tightened them so tight that they caused Mr. Hayes extreme pain and cut off his circulation. Sergeant McKinney then bent Mr. Hayes' fingers backward to cause him more pain. Officers Evans and Kypreos watched these actions but did not intervene.

Sergeant McKinney, Officer Evans, and Officer Kypreos then took Mr. Hayes to the shower area. Sergeant McKinney and Officer Kypreos attacked Mr. Hayes while Officers Downs and Evans watched. Sergeant McKinney and Officer Kypreos took Mr. Hayes to a different shower area, where they slammed his head into a metal door.

Sergeant McKinney and Officer Kypreos took Mr. Hayes to the medical area and continued to use unnecessary force and cause unnecessary pain on the way. Officer Lunsford joined them, placed a "spit mask" over Mr. Hayes' head, and kneed him in the face while doing so.

Once Mr. Hayes arrived at the medical area, Sergeant McKinney told Nurse Bryant Mr. Hayes was experiencing chest pain. Nurse Bryant and Nurse Pryor hooked Mr. Hayes up to an EKG machine. While Nurse Pryor attended to other patients, Lieutenant Hill, Officer Kypreos, and Officer Gray taunted and cursed at Mr. Hayes. While waiting for the EKG results, Mr. Hayes told Nurse Bryant and Officer Lunsford about the attacks he suffered while being transported to the medical area and stated that his wrists, ankles, hands, and head needed to be examined for injuries. Officer Lunsford responded by hitting Mr. Hayes in the head and chest multiple times. Nurse Bryant, Officer Gray, Officer Kypreos, and Lieutenant Hill watched this attack and did not intervene. Officer Lunsford photographed some, but not all, of Mr. Hayes' injuries.

Mr. Hayes' EKG revealed left ventricular hypertrophy and an "extremely rapid sinus rhythm." Dkt. 72 at ¶ 85. Nurse Bryant acknowledged that these results may indicate a heart attack, but she thought sending Mr. Hayes to the hospital would be "a waste of time and money." *Id.* at ¶ 86. Nurse Pryor told Nurse Bryant to throw away the test results instead of sending Mr. Hayes to the hospital. Mr. Hayes believes Maxim and Wexford both have policies requiring their employees to save and store such records.

Nurse Bryant released Mr. Hayes without providing any treatment. Officer McKinney placed Mr. Hayes in a holding cell and left him there for three and one-half hours. Officer McKinney did not remove Mr. Hayes' handcuffs or shackles, which were extremely tight.

After Mr. Hayes was released from the holding cell, a different officer took him back to the medical area to have his wrists and ankles examined. Mr. Hayes informed Nurse Pryor that he had deep cuts around his wrists and ankles; that he was experiencing tingling, coldness, and pain throughout his extremities; and that he had a knot on his forehead and was experiencing head pain. Nurse Pryor refused to examine or treat Mr. Hayes. Nurse Bryant created false medical records saying that she examined Mr. Hayes during this time and found no injuries.

On October 21, a different nurse examined Mr. Hayes during sick call. She documented scars on his wrists and ankles and that his extremities were numb and cold to the touch. The nurse referred Mr. Hayes to Dr. Talbot to test for nerve damage in his extremities and a head injury and to treat his injuries.

On October 22, Sergeant McKinney created numerous false reports stating that Mr. Hayes resisted the officers on October 10. He did this to cover up the officers' use of unreasonable force.

Mr. Hayes met with Dr. Talbot on October 24 and described his symptoms, including severe headaches for the past 12 days, vomiting, confusion, and weakness. After Mr. Hayes told Dr. Talbot that his injuries were caused by correctional officers, Dr. Talbot stated to a nurse, Jasmine, that they needed to be careful about what they documented in his records because Mr. Hayes may try to use it to sue the officers. Dr. Talbot dismissed Mr. Hayes without examining or treating him. Dr. Talbot created false medical records stating that he examined Mr. Hayes and found no injuries.

While Mr. Hayes was at this medical appointment, Sergeant McKinney and Officer Gray ransacked Mr. Hayes' cell, destroying his food, religious books and materials, and legal work. Afterward, Sergeant McKinney stated, "That's what you get for filing grievance on me you snitch." Dkt. 72 at ¶ 129. Mr. Hayes had filed a grievance regarding the attacks that occurred on October 10. Grievance Specialist Conyers refused to investigate the matter so the officers would not be held accountable.

Mr. Hayes alleges PCF Warden Zatecky and Deputy Warden Alsip were aware before October 10 of abusive conduct by Sergeant McKinney, Officer Kypreos, and Officer Lunsford over a period of years but failed to take any corrective action. He also states that Warden Zatecky failed to take any corrective action after learning of this incident.

Mr. Hayes alleges that Wexford, Health Services Administrator Linda Frye, and Warden Zatecky were aware for months before this incident that Dr. Talbot was denying inmates medical care but failed to take corrective action.

### III. Discussion of Claims

Based on the allegations discussed in Part II, the following claims **shall proceed** pursuant to 42 U.S.C. § 1983:

- Eighth Amendment excessive force claims against Sergeant McKinney, Officer Kypreos, and Officer Lunsford;

- Eighth Amendment failure-to-protect claims against Officer Evans, Officer Kypreos, Lieutenant Hill, Nurse Bryant, Warden Zatecky, and Deputy Warden Alsip;

- Eighth Amendment medical care claims against Nurse Bryant, Nurse Pryor, Dr. Talbot, Nurse Jasmine, Wexford, HSA Frye, and Warden Zatecky; and

- a First Amendment retaliation claim against Sergeant McKinney.

Claims against PCF are **dismissed**. PCF is a correctional facility—not a person or entity that can be sued. *See, e.g.*, *White v. Knight*, 710 F. App'x 260, 262 (7th Cir. 2018) ("As for the

defendant prison, the Correctional Industrial Facility, a building is not a person capable of being sued under § 1983."); *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) ("[T]he district court was correct that, in listing the Knox County Jail as the sole defendant, Smith named a non-suable entity.").

The claim that Grievance Specialist Conyers failed to investigate Mr. Hayes' grievances is **dismissed** for **failure to state a claim** upon which relief can be granted. It is well-settled that denying an inmate's grievance or refusing to investigate an incident after the fact does not, by itself, amount to a constitutional violation. *See e.g.*, *McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013) ("McGee's claims against . . . the individuals who ruled against McGee on the institutional grievances he filed . . . fail as a matter of law . . . ."); *George v. Smith*, 507 F.3d 605, 609–610 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

Claims against Maxim are also **dismissed** for **failure to state a claim** upon which relief may be granted. Mr. Hayes alleges that Maxim's employee, Nurse Bryant, violated his constitutional rights by denying him necessary medical care and turning a blind eye to violence by members of the prison staff. However, assuming Maxim may be liable for such violations, it may only be liable to the same extent as a municipal entity. *See Jackson v. Ill. Medi-Car, Inc*., 300 F.3d 760, 766 n.6 (7th Cir. 2002). Such entities "cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat superior* for constitutional violations committed by their employees." *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1005–1006 (7th Cir. 2017). Rather, they

may only "be held liable for unconstitutional municipal policies or customs." *Id.* at 1006 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978).

Mr. Hayes asserts only one allegation against Maxim: that it had a policy requiring Nurse Bryant to preserve his test results instead of destroying them. He alleges that Nurse Bryant *violated* Maxim's policy—not that Nurse Bryant violated his rights *due to* a Maxim policy. "[A] plaintiff can plead himself out of court by alleging facts that show there is no viable claim." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008). That is the case here.

Finally, at Mr. Hayes' request, all claims against Officers Downs and Gray are **dismissed**. *See* dkts. 76, 77.

### IV. Issuance of Process and Further Proceedings

The **clerk is directed**, pursuant to Federal Rule of civil Procedure 4(c)(3), to issue process to Defendants (1) Steven Hill, (2) Shelby Bryant, and (3) Nurse Jasmine in the manner specified by Rule (4)(d). Process shall consist of the second amended complaint (dkt. 72), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Entry.

All other defendants have already appeared and will receive notice of this Entry. The pretrial schedule at dkt. 57 remains in effect until further notice.

The claims discussed in Part III are the only claims the Court identified in the second amended complaint. If Mr. Hayes believes he asserted additional claims that the Court did not address, he shall have **through August 24, 2020**, to notify the Court.

Mr. Hayes' motions to dismiss, dkts. [76] and [77], are **granted**. Defendants Downs and Gray are **dismissed** from the action. The **clerk is directed** to make the following updates to the docket:

- **terminate** Officer Downs as a party;

- **change the name** of Defendant "Ounsford" to "Boyd Lunsford;" and

- **change the nam**e of "S. Bryant" to "Shelby Bryant."

**IT IS SO ORDERED.**

Date:      7/27/2020

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

QUINTERO HAYES
213543
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

SHELBY BRYANT
(Address Restricted)

Heather Terese Gilbert
CASSIDAY SCHADE LLP
hgilbert@cassiday.com

Marley Genele Hancock
INDIANA ATTORNEY GENERAL
marley.hancock@atg.in.gov

Emily Kathleen VanTyle
CASSIDAY SCHADE LLP
evantyle@cassiday.com

Electronic service to IDOC employees at PCF:
        Lieutenant Stephen Hill
        Christina Conyers, Grievance Specialist

Nurse Jasmine
Medical Professional
PENDLETON CORRECTIONAL FACILITY
4490 West Reformatory Road
PENDLETON, IN 46064