UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| QUINTERO HAYES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>K. MCKINNEY, et al. )<br>)<br>Defendants. ) | No. 1:19-cv-04309-SEB-MPB |

**ENTRY GRANTING IN PART AND DENYING IN PART MEDICAL
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This action is based on Quintero Hayes' allegations that he was attacked by correctional officers and denied medical care at Pendleton Correctional Facility (PCF) in 2019. The Court resolved the correctional officers' motion for summary judgment in a separate entry. Here, the Court addresses the medical defendants' motion for summary judgment and finds that it must be granted in part and denied in part.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Mr. Hayes failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)); *see also Gupta v. Melloh*, no. 19-2723, at *7 (7th Cir. Dec. 6, 2021) (slip op.) ("Taking the facts in the light most favorable to the non-moving party does not mean that the facts must come only from the non-moving party. Sometimes the facts taken in the light most favorable to the non-moving party come from the party moving for summary judgment or from other sources.").

## II. Facts

On October 10, 2019, Mr. Hayes was in his cell and began to feel chest pains around noon. Dkt. 118-1 at 62:24–63:9 (Hayes Deposition). Officers eventually came to Mr. Hayes' cell and escorted him to the medical unit.

Mr. Hayes alleges that officers physically abused him at his cell door, on the way to the medical unit, and after he arrived there. Those allegations are the subject of the state defendants' motion for summary judgment, which the Court has addressed at length. *See* dkt. 130. For purposes of this motion, it suffices to acknowledge Mr. Hayes' allegations that officers bent his hands and fingers to cause pain, placed him in excessively tight handcuffs, pushed him headfirst into a metal fire door, tripped him and slammed him to the ground, bent his hands and fingers again, kneed him in the face, placed tight shackles around his ankles, and then hit him in the head and chest several times. Mr. Hayes testified at his deposition that the officers' misconduct left him with bruises and cuts around his wrists and ankles, numbness in his fingers and ankles, and a bleeding knot on his forehead. Dkt. 118-1 at 30:17–21, 31:17–32:2, 90:9–17, 105:21–106:14.

When Mr. Hayes arrived in the medical unit, he was taken to an enclosed space with a privacy curtain and an examination table. Dkt. 125. Video shows Nurse Shelby Bryant measuring Mr. Hayes' blood pressure and, later, performing an EKG. *Id.*

The video begins with Mr. Hayes on the examination table, so no video shows what happened or who was present upon his arrival in the medical unit. *Id.* A spit mask covers Mr. Hayes' head, and his hands and ankles remain cuffed, throughout this examination. *Id.* When Nurse Bryant takes Mr. Hayes' blood pressure, he is lying face down on the table. *Id.* No cuts or bruises are visible on the video, but cuts and bruises would not obviously be visible given the

quality of the video and the fact that Mr. Hayes' head, wrists, and ankles are all at least partially covered.

Nurse Bryant's treatment notes state that Mr. Hayes was "brought in after [an] altercation," his vital signs were within normal limits, and "no injuries [were] noted." Dkt. 118-3 at 2. However, Mr. Hayes testified that Nurse Bryant "never looked at [his] injuries." Dkt. 118-1 at 30:13–14. If Nurse Bryant examined Mr. Hayes' head, wrists, or ankles, the camera did not capture it. Dkt. 125.

No other medical professional is visible on either of the two videos showing the inside of the medical unit. *Id.* However, Mr. Hayes attests that Nurse Kerry Pryor was nearby and that he or a correctional officer told Nurse Bryant to throw away the EKG results instead of sending him to the hospital. Dkt. 118-1 at 25:18–28:13.

After the EKG, Mr. Hayes was detained in a nearby "shakedown cage" with his handcuffs and shackles still on. *Id.* at 30:3–5. Between 4:00 and 5:00 P.M., Officer Shahada returned Mr. Hayes to the medical unit for attention to his injuries. *Id.* at 29:14–25. When Mr. Hayes entered, Nurse Pryor said, "I told y'all to send him back. He's okay. He'll be okay when the handcuffs come off and the shackles." *Id.* at 30:9–12. Mr. Hayes told Nurse Pryor that his arm was cut, he was in pain, and he could not feel his fingers, but she refused to look at his injuries. *Id.* at 30:12–31:5. Nurse Pryor did not document her interaction with Mr. Hayes. *See* Dkt. 118-3.

Mr. Hayes had two medical appointments on October 15. A nurse practitioner procured a urine sample for tests related to a separate medical condition. Dkt. 118-3 at 3–6. Mr. Hayes also met with a mental health counselor and discussed the October 10 incident. Dkt. 118-3 at 7–8. The counselor's treatment notes do not discuss Mr. Hayes' physical injuries. *Id.*

On October 17—a week after the incident—Mr. Hayes submitted a request for healthcare. Dkt. 118-3 at 9. At the top of the form, he wrote "PAIN EMERGENCY." *Id.* He reported scars

4

and cuts around his wrist and ankles, tingling and numbness in his fingers and feet, and painful headaches. *Id.* A nurse examined Mr. Hayes four days later and documented that his wrists and ankles were scarred and bruised, he reported headaches and numbness in his toes and fingers, and his extremities were cold to the touch. *Id.* at 9–12. The nurse referred Mr. Hayes for assessment by a doctor. *Id.*

On October 24, Mr. Hayes met with Dr. Talbot. Dkt. 118-3 at 13–17. Dr. Talbot documented that Mr. Hayes reported the abuse he suffered on October 10 but also wrote that "there were no bodily injuries noted" and that Mr. Hayes had no swelling, wounds, or abrasions. *Id.* at 13, 15. Dr. Talbot also documented Mr. Hayes' reports of numbness in his fingers but wrote that he was experiencing that numbness due to withdrawal from a medication he stopped taking. *Id.* at 13. Curiously, Dr. Talbot also wrote that there was "NO HAND/FINGER NUMBNESS DETECTED" during their visit. *Id.* at 15.

Mr. Hayes testified that Dr. Talbot checked his blood pressure, pulse oximetry, and temperature, but never assessed the injuries he described in his healthcare request. Dkt. 118-1 at 38:20–39:25. According to Mr. Hayes, Dr. Talbot told his assistant to be careful what she wrote in Mr. Hayes' medical records because it might be used against the officers in a lawsuit. *Id.* at 38:10–19.

### III. Analysis

When the Court screened Mr. Hayes' second amended complaint, it identified Eighth Amendment medical care claims against seven defendants. "Prison officials violate the [Eighth Amendment's] prohibition on cruel and unusual punishment if they act with deliberate indifference to a prisoner's serious medical condition." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "A medical condition is serious if it 'has been

5

diagnosed by a physician as mandating treatment' or 'is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). "As its name implies, deliberate indifference requires 'more than negligence and approaches intentional wrongdoing.'" *Goodloe v. Sood*, 947 F.3d 1030 (7th Cir. 2020) (quoting *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)). "[T]he evidence must show that the prison official . . . knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Id.*

One defendant, Nurse Jasmine, has been dismissed from the action. Another, Nurse Bryant, has not answered, and the clerk has entered default against her. Another, Warden Zatecky, moved for summary judgment with the state defendants. Here, the Court considers whether summary judgment is appropriate for the remaining four defendants: Nurse Pryor, Dr. Talbot, Health Services Administrator (HSA) Frye, and their employer, Wexford of Indiana, LLC. Claims against Nurse Pryor and Dr. Talbot must be resolved by settlement or trial, but HSA Frye and Wexford are entitled to summary judgment.[1]

**A.     Nurse Pryor**

Nurse Pryor argues both that Mr. Hayes was not suffering from a serious medical need when she encountered him on October 10 and that, regardless, her response was not deliberately indifferent. The record, however, would allow a reasonable jury to find otherwise.

When Mr. Hayes arrived at the medical unit, his head had been rammed into a metal door, and he had been slammed to the ground. He had blood on his face, bruises and cuts around his

---

[1] Like the state defendants, the medical defendants note that Mr. Hayes was punished for resisting officers on October 10 and argue that this bars him from contesting facts supporting the disciplinary charge. Dkt. 120 at 16–18. Like the state defendants, the medical defendants also fail to explain how this bar relates to their duty to treat Mr. Hayes' serious medical needs or entitles any defendant to summary judgment. *See* dkt. 130 at 6, n.1. "[P]erfunctory and undeveloped arguments . . . are waived." *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) (internal quotations omitted).

wrists and ankles, and numbness in his fingers and ankles. When Mr. Hayes returned later, he told Nurse Pryor that his arm was cut, that he was in pain, and that he could not feel his fingers. *Id.* at 30:12–31:5. A reasonable lay person would perceive that a potential head injury and numbness are conditions requiring a doctor's attention and that "'a reasonable doctor or patient would find worthy of comment or treatment.'" *Perry*, 990 F.3d at 511; *Hayes v. Snyder*, 546 F.3d 516, 522–23 (7th Cir. 2008) (quoting *Guitierrez v. v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Indeed, this appears to be the conclusion reached by the officer who returned Mr. Hayes to the medical unit from the shakedown cage.

Whether or not Nurse Pryor was present when Mr. Hayes first visited the medical unit, he testified that he returned hours later and complained that his arm was cut, that he was in pain, and that he could not feel his fingers. Nurse Pryor said, "I told y'all to send him back. He's okay. He'll be okay when the handcuffs come off and the shackles." *Id.* at 30:9–12. And she did so without any examination whatsoever.

From these facts, a jury could reasonably determine that Nurse Pryor was deliberately indifferent to Mr. Hayes' serious medical needs. Medical professionals are "entitled to deference in treatment decisions" based on "professional judgment," *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008), but the record does not indicate that Nurse Pryor made a decision or exercised judgment. She dismissed Mr. Hayes sight unseen. A jury could reasonably find that she demonstrated "total unconcern" for Mr. Hayes' condition and inexplicably delayed his treatment in a manner that unnecessarily prolonged his suffering. *Donald v. Wexford Health Sources*, 982 F.3d 451, 458 (7th Cir. 2020); *Goodloe*, 947 F.3d at 1031. Nurse Pryor is not entitled to summary judgment.

7

**B.    Dr. Talbot**

Similar considerations guide Dr. Talbot's case for summary judgment. When Mr. Hayes submitted his request for healthcare on October 17, a week after officers harmed him, he characterized his pain as an emergency and reported scars and cuts around his wrist and ankles, tingling and numbness in his fingers and feet, and painful headaches. When a nurse examined Mr. Hayes on October 21, she observed that his wrists and ankles were scarred and bruised and that his extremities were cold to the touch. *Id.* at 9–12. A jury could easily determine that "'a reasonable doctor or patient would find'" these symptoms "'worthy of comment or treatment.'" *Hayes*, 546 F.3d at 522–23 (7th Cir. 2008) (quoting *Guitierrez*, 111 F.3d at 1373). Indeed, the nurse who examined Mr. Hayes appears to have found his condition worthy of treatment, as she referred Mr. Hayes to Dr. Talbot. Thus, the record permits a finding that Mr. Hayes had serious medical needs when he met with Dr. Talbot on October 24.

The medical defendants argue that Dr. Talbot's treatment notes from October 22 prove that he conducted a proper examination and found no physical injuries. But this argument is problematic in at least two ways. First, Dr. Talbot's treatment notes are not infallible. They document both that Mr. Hayes was experiencing numbness in his fingertips due to medication withdrawal, *see* dkt. 118-3 at 13, and that he was not experiencing hand or finger numbness at all, *see id.* at 15. Both cannot be true. Second, even if Dr. Talbot's treatment notes are accurate, Mr. Hayes' testimony directly contradicts them, and factual disputes are resolved in the nonmovant's favor at summary judgment. Based on Mr. Hayes' testimony that Dr. Talbot only checked his blood pressure, pulse oximetry, and temperature, a jury could reasonably find that Dr. Talbot demonstrated total unconcern for Mr. Hayes' conditions and unnecessarily prolonged

8

his suffering in a manner that did not reflect medical judgment. *See Donald*, 982 F.3d at 458; *Goodloe*, 947 F.3d at 1031; *Sain*, 512 F.3d at 894–95.

**C.     HSA Frye**

Mr. Hayes' claim against HSA Frye is straightforward, but it is not supported by evidence. Mr. Hayes alleges that HSA Frye "knew for months that Dr. Talbot was denying inmates medical care and failed to take corrective action." Dkt. 118-1 at 48: 3–7. But Mr. Hayes has not presented testimony from HSA Frye or documentary evidence to establish that she knew before this incident that Dr. Talbot routinely dismissed patients without examining or treating them. The only evidence supporting Mr. Hayes' allegation is his own testimony, and he has not established how he learned that HSA Frye knew of Dr. Talbot's practices. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

"Liability under [42 U.S.C.] § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). No evidence indicates that HSA Frye was directly involved in, or even aware of, Mr. Hayes' injuries or the treatment he received in October 2019. She is entitled to summary judgment.

**D.     Wexford**

Mr. Hayes' claim against Wexford is similar to his claim against HSA Frye: He alleges that Wexford knew Dr. Talbot was regularly denying essential medical care and that it failed to take corrective action, enforce its standards, or train its employees. *See* dkt. 118-1 at 51:16–52:25. This claim too lacks evidence.

9

As "a private corporation that has contracted to provide essential government services," Wexford "is subject to at least the same rules that apply to public entities." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017). This means "the *Monell* theory of municipal liability applies" to Mr. Hayes' claim against Wexford. *Whiting v. Wexford Health Sources*, 839 F.3d 658, 664 (7th Cir. 2016) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). "The critical question under *Monell* . . . is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson*, 849 F.3d at 379.

The only evidence of Mr. Hayes' medical care, and medical care at the prison more generally, is Mr. Hayes' deposition and his medical records. The record includes no documentary evidence of a formal Wexford policy or protocol that may have caused Nurse Pryor or Dr. Talbot to deny him medical care. In his deposition, Mr. Hayes testified that he knows Wexford has a policy *requiring* its employees to provide inmates with healthcare. *See* dkt. 118-1 at 47:4–7. But no evidence supports a conclusion that such a policy caused the Eighth Amendment violations Mr. Hayes is pursuing in this case. Wexford is entitled to summary judgment.

### IV. Conclusion

The medical defendants' motion for summary judgment, dkt. [118], is **granted** as to Defendants Frye and Wexford and **denied** in all other respects. Claims against Defendants Frye and Wexford are **dismissed with prejudice**, and the **clerk is directed** to terminate them from the docket. No partial final judgment will issue.

Claims remaining in the action include:

- Eighth Amendment force clams against Sergeant McKinney, Officer Kypreos, and Officer Lunsford;

- Eighth Amendment claims against Officer Evans, Officer Kypreos, and Lieutenant Hill for failing to protect Mr. Hayes from violence by other officers;

- Eighth Amendment claims against Warden Zatecky, Dr. Talbot, Nurse Pryor, and Nurse Bryant based on the denial of medical care; and

- a First Amendment retaliation claim against Sergeant McKinney.

Default has been entered against Nurse Bryant. All other claims will be resolved by settlement or trial.

The Court *sua sponte* reconsiders and **grants** Mr. Hayes' previous motions for assistance with recruiting counsel, dkts. [14], [15], and [96]. The Court will attempt to recruit counsel to assist Mr. Hayes through the conclusion of the action. The Court requests that Magistrate Judge Brookman hold a telephonic status conference to determine an appropriate schedule once recruited counsel has appeared.

**IT IS SO ORDERED.**

Date: 12/16/2021

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

QUINTERO HAYES
213543
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

SHELBY BRYANT
Electronic Service Participant – Court Only

Bryan Findley
CASSIDAY SCHADE LLP
bfindley@cassiday.com

Heather Terese Gilbert
CASSIDAY SCHADE LLP
hgilbert@cassiday.com

Zachary Robert Griffin
INDIANA ATTORNEY GENERAL
zachary.griffin@atg.in.gov

Margo Tucker
INDIANA ATTORNEY GENERAL
margo.tucker@atg.in.gov